UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Donald BROWN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:13CV00189 RWS |
| CAPITAL RESTORATION & PAINTING CO., et al., | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiffs, trustees of the Local Union No. 1 of Missouri Pension Trust, filed this action seeking to collect a withdrawal liability assessment under the Multiemployer Pension Act Amendments Act of 1980, 29 U.S.C. §§ 1381 et seq. The defendants are Gary Sextro and his corporate alter egos, Capital Restoration and Painting Co., Capitol Restoration Services, Inc, and Capital R&P Company ("Sextro"). Plaintiffs move for summary judgment. Defendants oppose summary judgment, and the issues are fully briefed.

For the reasons stated below, I will grant Plaintiffs' motion as to liability, reserving the question of damages pending further briefing.

## Standards Governing Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Alabama v. N. Carolina, 130 S. Ct. 2295, 2308 (2010). Where appropriate, summary judgment avoids needless and costly litigation and promotes judicial efficiency. Harris v. SWAN, Inc., 459 F.

Supp. 2d 857, 862 (E.D. Mo. 2005). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education, Island Trees Union Free School District v. Pico, 457 U.S. 853, 863 (1982).

Once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corporation, 477 U.S. at 322–24. Under these standards I find the following undisputed facts.

**Background**

The Local Union No. 1 of Missouri Pension Trust ("Trust") is a multi-employer pension plan which provides retirement benefits for employees of contributing employers who are obligated to make contributions pursuant to a collective bargaining agreement ("CBA"). (Affidavit of Donald Brown, Doc. #22-1, at ¶ 3.) Plaintiffs Donald Brown, Brian Jennewein, John Finder, John Hopkin, Robert Guinn, Richard Frisch, R. Mike Heitkamp, John J. Smith, Brian Grant, and David Gillick ("Trustees") are the duly designated and acting trustees of the Trust. (Complaint at ¶ 3, Answer at ¶ 3.)

Capital Restoration and Painting Company ("Capital") was party to a CBA with the Bricklayers Local Union No. 1 of Missouri ("Local 1"). The CBA had an effective date of June

1, 2006. (Brown Aff., Doc. #22-1, at ¶2). The CBA required Capital to make contributions to the Trust on the basis of all hours worked by covered employees. The CBA allowed Local 1 to suspend the CBA in the event of fringe benefit delinquencies. Id. at ¶3–4. The CBA provides: "The terms and conditions of this Agreement shall unless otherwise provided, herein commence on the 1st of June 2006 and continue in effect from and after the date of effectiveness to and including May 31, 2011 and thereafter from year to year provided neither party gives notice to the other of its desire to negotiate a new Agreement." (Brown Aff., Doc. #22-1, at ¶6). The parties dispute whether the CBA was terminated on May 31, 2011 or whether it is still in effect. (Defs.' Resp. to Pls.' Statement of Undisputed Facts, Doc. #32, at ¶22).

Capital became delinquent in its fringe benefit contributions in 2009. When Capital failed to pay its delinquent contributions, Local 1 sent a letter, dated August 28, 2009, suspending the CBA and informing Capital's bricklayers that they must cease working for Capital. Id. at ¶5. As a result of the 2009 delinquency, Trustees filed a lawsuit seeking unpaid fringe benefit contributions. Case No. 4:09CV1130 RWS. On July 30, 2010 the Trustees obtained a judgment against Capital in the amount of $129,876.84. The judgment covered the period of January 1, 2007 through December 21, 2009. (Affidavit of Gary Juenger, Doc. #22-8, at ¶2). On September 2, 2011, I also entered an Order granting Trustees' motion for a creditor's bill in equity and to pierce the corporate veil, finding that Capital Restoration and Painting Co., Capitol Restoration Services, Inc, and Capital R&P Company were alter egos of Gary Sextro. Case No. 4:09CV1130 RWS [Doc. #142]. That judgment was satisfied on January 23, 2013. (Affidavit of Gary Juenger, Doc. #22-8, at ¶4).

On August 27, 2012, Trustees' counsel sent a withdrawal liability assessment letter by

certified mail to Sextro. Sextro received the letter on August 29, 2012. The assessment letter reflected that Capital was part of a common controlled group with Capitol Restoration Services Inc. ("Capitol"), Capital R&P Company ("Capital R&P"), and Sextro. The assessment letter stated that the Defendants were required to either pay the assessed withdrawal liability in a lump sum or to begin making quarterly interim payments on or before October 1, 2012. The assessment letter further notified Sextro that he had the right, within ninety days, to request that the Trust review its findings regarding withdrawal liability. (Withdrawal Liability Assessment Letter, Doc. #22-17).[1]

On September 26, 2012, Sextro wrote former Local 1 Financial Secretary Joseph Schonlau, indicating that Capital had paid off its debts and therefore was now in good standing. (Brown Aff., Doc. #22-1, at ¶9.). On October 1, 2012, Brown wrote Sextro, stating that the CBA between Local 1 and Capital had expired. Id. at ¶10.

Defendants did not make any payments towards the assessment. (Affidavit of Michael A. Evans, Doc. #22-16, at ¶5). Defendants have not requested arbitration of the withdrawal liability assessment. Id. at ¶6.

## Discussion

Plaintiffs, as the designated and acting trustees of the Trust, are fiduciaries entitled to bring this action pursuant to 29 U.S.C. §§ 1002(14)(A); 1401(b)(1); 1451.

Congress has imposed a withdrawal liability on employers who completely withdraw

---

[1] Defendants denied this statement in their Response to Plaintiffs' Statement of Undisputed Facts and cited certain documents in the record. However, these documents do not actually dispute this fact. Moreover, in their opposition, Defendants admit that this notice was sent. (Defs.' Mem. in Opp. to Pls.' Mot. for Summ. J., Doc. #31, at 3).

from a multiemployer pension fund. 29 U.S.C. §§ 1381(a) and (b), 1383(a), 1391. The withdrawal liability is calculated according to statutory guidelines. Am. Cleaners & Laundry Co. Inc. v. Textile Processors, Serv. Trades, Health Care Prof'l & Technical Employees Int'l Union Local 161, 482 F. Supp. 2d 1103, 1116 (E.D. Mo. 2007). A complete withdrawal occurs when a contributing employer permanently ceases to have an obligation to contribute to the fund or permanently ceases all operations covered by the fund. 29 U.S.C. § 1383(a); Seaway Port Authority of Duluth v. Duluth-Superior ILA Marine Association Restated Pension Plan, 920 F.2d 503, 505 (8th Cir. 1990). The purpose of withdrawal liability is to require the withdrawing employer to pay its proportionate share of the Trust's unfunded vested benefits. Diffley v. Prescription Serv., Inc., 4:94 CV 2231 DDN, 1996 WL 742853, at *2 (E.D. Mo. Feb. 13, 1996) (citing Bowers v. Transportation Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990)).

If the employer challenges the trustees' withdrawal liability determination, "it still must pay according to the trustees' schedule in the interim under the statute's 'pay now, dispute later' collection procedure." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 522 U.S. 192, 197 (1997). These payments are subject to adjustment or recoupment in the event of subsequent vindication. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Bhd. Labor Leasing, 974 F. Supp. 751, 754 (E.D. Mo. 1997).

The Multiemployer Pension Act Amendments Act (MPAA) provides for arbitration of the fact and amount of withdrawal liability. 29 U.S.C. § 1401, Am. Cleaners & Laundry Co. Inc., 482 F. Supp. 2d at 1116. This obligation to arbitrate is imposed by statute and does not arise from an agreement of the parties. Id. To be timely, arbitration must be initiated within 60

days of the earlier of (1) the Trust's response to a request for review, or (2) 120 days of the request itself. 29 U.S.C. § 1401 (a)(1).

Failure to initiate arbitration in a timely manner constitutes a waiver of any defenses a withdrawing employer may have concerning the fact and amount of withdrawal liability. Diffley, 1996 WL 742853, at *2; Vaughn v. Sexton, 975 F.2d 498, 502 (8th Cir. 1992). Barring defenses not initially arbitrated serves the congressional interest in speedy dispute resolution and judicial economy. Id. at 501. Interpreting failure to arbitrate as a waiver of defenses preserves the declaration in 29 U.S.C. § 1401 that any dispute related to a determination of withdrawal liability assessment is to be arbitrated. Id. See also In re Affiliated Foods, Inc., 249 B.R. 770, 785 (Bankr. W.D. Mo. 2000) (Chapter 11 debtors, by failing to request a review of a withdrawal liability assessed against them by a multiemployer pension plan, and by failing to file notice of initiation of arbitration, waived their right to contest the amount of their assessed withdrawal liability); Amalgamated Lithographers of Am. v. Unz & Co. Inc., 670 F. Supp. 2d. 214, 229 (S.D. N.Y. 2009) ("The MPPAA and the cases are clear — if an employer wishes to dispute anything relating to its assessed liability or payment schedule, it must raise the matter in a timely arbitration.").

If neither party seeks arbitration, the withdrawal liability assessment becomes due according to the schedule devised by the plan sponsor. The plan sponsor may then sue for collection of the withdrawal liability as determined under the schedule. Vaughn, 975 F.2d at 501. "The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1).

Assuming that the CBA was terminated as of May 31, 2011, the Trustees had the right

under the MPAA to assess withdrawal liability as of that date. Sextro permanently ceased having an obligation to contribute to the Trust on that date because his employees were no longer represented by Local 1. Seaway Port, 920 F.2d at 505. On August 27, 2012, the Trust notified Sextro of the amount of his liability, the schedule for payments and demanded payment, pursuant to 29 U.S.C. § 1399(b)(1). Sextro then had 90 days within which to request review of the Trust's determination. 29 U.S.C. § 1399(b)(2)(A).

Sextro argues that his September 26, 2012 letter constitutes a request for review under 29 U.S.C. § 1399(b)(2)(A). That section provides that an employer:

> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
>
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
>
> (iii) may furnish any additional relevant information to the plan sponsor.

Sextro's September 26, 2012 letter states, in its entirety:

> As I am sure you are aware, our Company has paid off all past due benefits.
>
> According to the "temporary termination" as spelled out in your letter of August 28, 2009, due to non-payment of fringe benefit contributions, we are now in good standing.

(Doc. #33-4). The letter contains no reference to withdrawal liability, does not identify an inaccuracy in the calculation of the amount of the unfunded vested benefits allocable to the employer, and does not directly or indirectly seek a "request for review." Brown's October 1, 2012 letter responded in some detail to Sextro's claim that Defendants were in good standing with the union. (Doc. #33-5). Therefore, even if Sextro's note constituted a request for a review,

then Brown's October 1, 2012 letter amounted to a notification under U.S.C. § 1399(b)(2)(B) of the "the plan sponsor's decision, the basis for the decision, and the reason for any change" in the assessment.

I need not, however, determine whether or not the September 26, 2012 letter was a "request for review" under U.S.C. § 1399(b)(2)(A) or whether the Octover 1, 2012 letter was a notification of the outcome of a "reasonable review" under U.S.C. § 1399(b)(2)(A), because under any interpretation, the time for arbitration had expired. The statute provides that, if the employer remains dissatisfied with the Trust's determination, it can initiate arbitration within 60 days after the earlier of: (1) the Trust's response to the employer's request for review, or (2) 120 days after the date of the request itself. 29 U.S.C. § 1401(a)(1). If arbitration is not initiated within that time period, the amount demanded by the Trust is due. 29 U.S.C. § 1401(b)(1). The parties may also jointly request arbitration within 180 days of the fund's demand. 29 U.S.C. 1401(a).

In this case, Sextro received the assessment letter on August 29, 2012. The deadline for a joint request for arbitration would have been 180 days later, on February 25, 2013. If, as Sextro argues, his September 26, 2012 letter was a request for review, and no reasonable review under U.S.C. § 1399(b)(2)(A) ensued, the deadline for either party to initiate arbitration would have been 180 days later, on March 25, 2013.[2] If, however, Brown's October 1, 2012 letter constituted a response under U.S.C. § 1399(b)(2)(B), then the deadline for arbitration would have been 60 days after the October 1 letter, on November 30, 2012.

---

[2] If the plan sponsor does not respond to the request for review, "[e]ither party may initiate the arbitration proceeding within a 60-day period after . . . 120 days after the employer's request under section 1399(b)(2)(A) . . . ." 29 U.S.C.A. § 1401. The total number of days to request arbitration in this circumstance is therefore 180.

Under any of these possible deadlines, the time for requesting arbitration has expired. The Trustees filed suit on January 29, 2013, which may have been prior to the deadline for requesting arbitration. Whether or not the time for arbitration had expired as of the filing date is, however, not a bar to summary judgment. The sections of the MPAA that "explicitly provide for payments pending the arbitrator's decision . . . would appear meaningless if there were no cause of action to enforce them." United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & Mc Donnell, Inc., 787 F.2d 128, 133 (3d Cir. 1986). A plan sponsor may therefore file suit for collection prior to the expiration of time for arbitration. Id.

By failing to make a timely request for arbitration pursuant to 29 U.S.C. § 1401(a)(1), Sextro waived any right to contest the fact or amount of withdrawal liability. Diffley, 1996 WL 742853, at *2. The dispute about whether or not the CBA was terminated as of May 31, 2011, resulting in Sextro's withdrawal from the plan, is a dispute about the fact of withdrawal liability. Any defense based on this argument was waived by Sextro because he failed to initiate timely arbitration as required by 29 U.S.C. § 1401(a)(1).

Sextro defaulted by failing to make timely payments. Therefore, the Trust is entitled to collect the entire amount due. Diffley, 1996 WL 742853, at *2. The Trust is entitled to not only the outstanding amount of the employer's withdrawal liability, but also accrued interest on the outstanding liability from the due date of the first payment which was not timely made. 29 U.S.C. § 1399(c)(5).

## Conclusion

Because there is no genuine issue of material fact and the Trustees are entitled to judgment as a matter of law, I will grant partial summary judgment on the issue of liability.

Plaintiffs shall file a Proposed Final Judgment setting out the total amount due, including damages, interest and attorneys' fees, and an accompanying Memorandum in support of the Proposed Judgment within twenty (20) days of the date of this Order. Defendants may file a response indicating whether they agree or disagree with the proposed form of judgment or the calculations within ten (10) days thereafter.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiffs' Motion for Summary Judgment [Doc. #21] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiffs will file a Proposed Judgment and Memorandum in accordance with this Memorandum and Order within twenty (20) days of this Order.

**IT IS FURTHER ORDERED that** Defendants may file a responsive brief in accordance with this Memorandum and Order within ten (10) days after the submission of Plaintiffs' Proposed Judgment.

                                            _____
                                            RODNEY W. SIPPEL
                                            UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2013.